# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DELILAH MCCURTIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 16 C 07729 |
| | ) | |
| MAGGIE BURKE, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Delilah McCurtis was convicted in Illinois state court of first degree murder. Although direct appellate review of her conviction ended in February 2013, McCurtis never filed a state post-conviction petition and did not file this federal habeas petition until July 2016. Because her claims are untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A), and are also procedurally defaulted, her petition is denied.

### I. Background[1]

In October 2005, Latoya Jones died as the result of four stab wounds to the back. *People v. McCurtis*, 2012 IL App (1st) 103157-U, ¶ 2 (Ill. App. Ct. 2012). It was undisputed that the petitioner, Delilah McCurtis, and Jones engaged in a fight that evening and McCurtis admitted during her trial testimony that during the fight she struck Jones with a knife at least once. *Id.* ¶ 7.

---

[1] A detailed recitation of the facts is not required to resolve the threshold procedural issues that the petition presents. To the extent that this opinion refers to the underlying facts, they are taken from the appellate court order affirming McCurtis's conviction on direct appeal. *People v. McCurtis*, 2012 IL App (1st) 103157-U, ¶ 2 (Ill. App. Ct. 2012). These findings are presumed correct on federal habeas review absent a petitioner's presentation of clear and convincing evidence to rebut them. *See* 28 U.S.C. § 2254(e)(1). "The presumption of correctness also applies to factual findings made by a state court of review based on the trial record." *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Morgan v. Hardy*, 662 F.3d 790, 797–98 (7th Cir. 2011). McCurtis has made no such presentation.

McCurtis was charged with the first degree murder of Jones; at trial the jury was also instructed on second degree murder based both on sudden and intense passion based on serious provocation and on unreasonable self-defense. *Id.* ¶ 8. The jury convicted McCurtis of first degree murder and the trial judge sentenced her to 27 years in prison. *Id.* ¶¶ 8-10. McCurtis appealed the verdict, arguing that the trial court had erroneously allowed multiple inconsistent statements by various witnesses, and appealed her sentence, which she argued was excessive. *Id.* ¶ 2. The appellate court affirmed her conviction and sentence. *Id.* McCurtis then filed a petition for leave to appeal with the Illinois Supreme Court seeking review only of the evidentiary issue. *See* Ex. E, Pet. for Leave to Appeal, ECF No. 14-5. The petition was summarily denied on November 28, 2012. *See People v. McCurtis*, 981 N.E.2d 1001 (Ill. 2012). McCurtis did not file a petition for *certiorari* with the United States Supreme Court or any state court post-conviction petition. *See* Pet. at 2-3, ECF No. 1.

On July 29, 2016, McCurtis filed this *pro se* habeas petition alleging four grounds for relief. First, McCurtis alleges that the trial court erroneously allowed the victim's mother to testify (and to disrupt the courtroom proceedings on one occasion). Second, she argues that her trial counsel was ineffective for a laundry list of reasons. Third, she advances a claim that takes issue in some fashion with the trial court's response to a jury question concerning the second degree murder instruction (this is also included as part of her ineffective assistance claim). And fourth, she renews her evidentiary argument that multiple inconsistent statements were improperly introduced.

**II. Analysis**

In its response, the state provides three grounds why McCurtis's petition should be dismissed. First, it argues that her petition is untimely. Second, it argues that her claims are

procedurally defaulted and that default should not be excused. Third, it argues that two of her claims—relating to the testimony of the victim's mother and the resolution of a jury question—are not cognizable. Because the Court finds that McCurtis's claims are both untimely and procedurally defaulted, it does not reach the cognizability arguments.

   1. **McCurtis's claims are time-barred and she has not demonstrated that the limitations period should be equitably tolled.**

AEDPA imposes a one year statute of limitations. 28 U.S.C. § 2244(d)(1). The state argues, and McCurtis does not contest, that the statute of limitations began running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). McCurtis's judgment became final when the time to file a petition for *certiorari* expired in the United States Supreme Court. *Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006). Thus, McCurtis's conviction became final on February 26, 2013 (90 days after the Illinois Supreme Court denied her petition for leave to appeal). Therefore, McCurtis's window to file a timely federal habeas petition expired on February 26, 2014.[2]

McCurtis filed this federal habeas petition on July 29, 2016, well after the statute of limitations had run. In response to this Court's show cause order asking why her petition should not be dismissed as untimely (ECF No. 8), McCurtis filed a short reply stating that in 2013 "all my legal transcript and paper work I needed in order to filed a successful habeas corpus petition were misplaced due to the 60 miles trip from Dwight Correctional Center to Logan Correctional Center." *See* Rule to Show Cause, ECF No. 10. McCurtis attached documentation showing she

---

[2] The filing of a state post-conviction petition tolls the AEDPA statute of limitations. *Tucker v. Kingston*, 538 F.3d 732, 733 (7th Cir. 2008). McCurtis, however, did not file any state petition so the filing period was not tolled on this basis.

3

had arrived at Logan on March 14, 2013. *See id.* at 5. She also attached an affidavit from a paralegal law clerk indicating that all women at Dwight Correctional Center had been transferred to Logan sometime in 2013. *See id.* at 7. McCurtis submitted no evidence beyond her own claim that the papers were lost, and provided no more detail about what paperwork was lost. McCurtis admits that she never submitted a grievance regarding her lost legal papers. *See* Reply at 1, ECF No. 18. She contends, however, that she "has written to the Circuit Clerk and public defender offices of her county" and that "due to extreme heavy caseload and cases it was difficult for her to receive the necessary tools to set forth a best defense for herself." *Id.*

A petitioner is entitled to equitable tolling only if she demonstrates both that "some extraordinary circumstance" prevented her from timely filing her habeas petition and she diligently pursued her rights during that time. *Holland v. Florida*, 560 U.S. 631, 649 (2010). McCurtis has the burden of proving that she is entitled to equitable tolling. *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008). For many years in this circuit, equitable tolling was nearly nonexistent. *See Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) ("We rarely deem equitable tolling appropriate—in fact, we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context."). In recent years, however, the Seventh Circuit has explained that equitable tolling is not a "chimera" existing only in the imagination of law professors. *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (*Socha II*). The Seventh Circuit has recently held that "intentional confiscation of a prisoner's habeas corpus petition and related legal papers" is an extraordinary circumstance that could justify equitable tolling. *Weddington v. Zatecky*, 721 F.3d 456, 464 (7th Cir. 2013). McCurtis here has not alleged that her legal papers were intentionally taken from her, merely that they were misplaced when she was transferred, so *Weddington* is not controlling on the question of whether the temporary loss of access to her

papers constitutes a circumstance sufficiently "extraordinary" to qualify for equitable tolling, but in any event the state has focused not on that question but rather on the second prong – whether McCurtis was diligent in her efforts to overcome that impediment.

To qualify for equitable tolling, it is McCurtis's burden to show that she exercised "reasonable diligence," *Holland*, 560 U.S. at 653, in pursuing her claim "despite the obstacle." *Kingston,* 538 F.3d at 734. For example, in *Holland*, the petitioner had sent his lawyer "many letters" including some noting the applicable legal rules, but the lawyer still failed to file a timely petition. *Id*. Similarly, in *Socha II*, the petitioner "repeatedly" wrote to his lawyer, contacted the public defender when he did not get responses from his lawyer, and notified the district court before his time to file expired that he wanted to preserve his habeas rights and needed more time. 763 F.3d at 687. Simply asking for help or documents, however, is not always enough – for example, waiting a year to inquire about the status of a motion is not reasonable diligence. *United States v. Davis*, No. 13 C 50360, 2014 WL 1047760, at *7 (N.D. Ill. Mar. 18, 2014). An inmate must take steps to ensure she does not become one of "the many cases in which a tardy petitioner puts nothing before the court and only later asks for equity to be exercised" in her favor. *Socha II*, 763 F.3d at 688.

Here, McCurtis has failed to meet her burden to demonstrate that she was diligent in pursuing her habeas claim. Though she has provided evidence to buttress her claim that she was transferred to a different facility in March 2013, she has not provided any evidence demonstrating how long, and over what specific period, she was without access to those papers. She provides no information about how many times she contacted her lawyer or the state court, or whether or not those communications were made within the statute of limitations period. If McCurtis did not begin her attempts to recover her legal paperwork until after February 26,

2014, she would not be entitled to equitable tolling in any event because the statute of limitations would already have run. Further, her contention that she was diligent in seeking the recovery of her papers is belied by her admission that she never filed a grievance with the prison over the missing documents. Relatedly, McCurtis provides no information to the Court about when, or how, she recovered her legal papers, although clearly at some point she did because she attached a number of transcripts to her petition. *See* Pet., ECF No. 9. If she recovered her papers more than a year before she filed her petition, her inability to access would not account for her failure to timely file her petition. Given her failure to provide any information about how long she was without her papers, or what she did to recover them, or when they were located, McCurtis has failed to demonstrate that she was diligent in seeking to recover her file, and thus is not entitled to equitable tolling.[3] *See U.S. ex rel. Adams v. Chandler*, No. 11 C 691, 2011 WL 3510953, at *3 (N.D. Ill. Aug. 10, 2011) (petitioner failed to allege obstacles with sufficient particularity, such as which ones took place during the one year period, to be granted equitable tolling).

Nor has McCurtis advanced any argument to explain why she needed her missing legal papers or why she could not file her petition without them. *U.S. ex rel. Hernandez v. Yurkovich*, No. 11 C 6910, 2012 WL 4338822, at *7 (N.D. Ill. Sept. 19, 2012) ("Petitioner has set forth no facts explaining what documents he was missing or why the absence of those documents prevented him from timely filing his petition."). This, question, too, bears on diligence; if McCurtis could reasonably be expected to file her petition without access to the missing documents, then in failing to do so she did not demonstrate adequate diligence.

---

[3] These shortcomings also bear on whether the missing papers qualify as an "extraordinary" obstacle to timely filing her petition; if the documents were misplaced for only a portion of the one-year limitations period, there would be reason to question whether McCurtis faced a sufficient obstacle to warrant equitable tolling.

Other than trial transcripts, McCurtis has not identified any particular documents she lost. The Seventh Circuit has indicated that the lack of trial transcripts is not a sufficient circumstance to warrant equitable tolling. *Lloyd v. Vannatta*, 296 F.3d 630, 634 (7th Cir. 2002) (joining "the other circuits to consider this issue [which] have held that the unavailability of a transcript does not allow equitable tolling to excuse an otherwise untimely petition").[4] While McCurtis's presentation of some of her claims (such as her issue with the response to the jury's question) may have benefited from access to the trial transcripts, McCurtis was present at her trial and thus knew about the issues identified in her present petition, but has failed to explain why she was unable to adequately identify or describe her claims without her legal papers. "[T]here is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petitioner need only 'set forth in summary form the facts supporting each of the grounds' specified in the petition." *Id.* at 633.[5] Because a habeas corpus petition need not be pleaded with particularity,

---

[4] *Lloyd* also holds that the state's failure to provide transcripts does not constitute a state created impediment to the filing of a habeas petition under § 2254(d)(1)(B). 296 F.3d at 633.

[5] As the Sixth Circuit has observed, the rules governing habeas proceedings suggest that access to the trial transcript is not essential to the filing of a habeas petition and therefore does not provide a basis for equitable tolling:

> A habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground." 28 U.S.C. § 2254, Rules Governing Section 2254 Cases, R. 2(c). But nowhere do the rules require the petitioner to submit a copy of the trial transcript. If anything, the rules seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record. The rules require the state to furnish the petitioner with the record once a habeas petition has been filed, and to "attach to [its] answer parts of the transcript that [it] considers relevant." *See id.* at R. 5(c). Further, the state must provide additional material upon request from the judge. See id. These rules indicate that a lack of access to the trial transcript is not the

citation to a transcript is unnecessary. *Id.* (citing *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002). The temporary inability to access copies of trial transcripts, then, does not excuse her failure to timely file a habeas petition.[6]

Finally on the question of diligence, the Court further notes that McCurtis made no effort to request any relief from this court during whatever period she did not have access to her papers. Unlike the petitioner in *Socha*, for example, McCurtis did not seek an extension of time to file the petition premised on her lack of access to her court papers,[7] or file a timely petition along with a request to supplement it based on access to the trial record. Instead, so far as the record she has set forth establishes, she sought no relief in this court, filed no grievance concerning the loss of her papers, and took no other action to recover those papers other than sending a single

---

> kind of "extraordinary circumstance" that stands in a petitioner's way and prevents a timely habeas filing.

*Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011).

[6] In *Socha II,* the Seventh Circuit arguably took a less demanding view of the diligence required by a petitioner when it held, without citation to, or discussion of, *Lloyd*, that the petitioner's lack of access to his court file (the contents of which the opinion never describes) gave him no hope of raising a plausible ineffective assistance of counsel claim, or a *Brady* claim, because both such claims require evaluation of the record as a whole. 763 F.3d at 679. The Seventh Circuit has instructed that district courts are not to assume that it has overturned an earlier precedent sub-silentio (*see, e.g., Iqbal v. Patel,* 780 F.3d 728, 729 (7th Cir. 2015)), so this court must conclude that, notwithstanding *Socha II, Lloyd* remains good law. Further, *Socha II* can be distinguished on the basis that the obstacles faced by petitioner there included not only his inability to access his court file, but also his inability to make use of the prison law library because he was being held in segregation. Further, the petitioner in *Socha II* demonstrated substantial diligence through "persistent" efforts to obtain his file. *Lloyd,* by contrast, involved only a discrete request for trial transcripts. On that basis, *Lloyd* is on-point here, where the only specific documents McCurtis has identified as being necessary to file her petition are trial transcripts.

[7] Such an extension is permissible because "the AEDPA statute of limitations defense is not jurisdictional." *Holland*, 560 U.S. at 645. "Logically, this suggests that an order accepting a filing after the limitations period has run is not beyond the power of the district court. Instead, it is effective if it can meet the standards for equitable tolling that the Court described in *Holland*." *Socha v. Pollard,* 621 F.3d 667, 671 (7th Cir. 2010) (*Socha I*).

letter to the Cook County Circuit Court Clerk and to the Public Defender at some point between March 2013 and July 2016 presumably asking those agencies to provide copies of unidentified documents. The court concludes, therefore, that McCurtis has not demonstrated diligence sufficient to warrant application of equitable tolling in her favor.

### 2. McCurtis's claims are procedurally defaulted in any event.

Even if the equitable tolling doctrine should be applied to save McCurtis's petition from untimeliness, her claims would nevertheless fail because they are procedurally defaulted. With the exception of her claim based on the admission of inconsistent prior statements, none of McCurtis's claims were ever presented to any Illinois state court. "If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Illinois generally does not allow post-conviction petitions more than six months after a conviction becomes final.[8] 725 ILCS 5/122-1(c).

Further, the claim that *was* presented to the state court, regarding multiple prior inconsistent statements by witnesses, was not presented as a federal constitutional claim and the

---

[8] There is a safety valve in this rule if "the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c). If applicable, this exception would render McCurtis's federal habeas claims unexhausted, precluding the court from addressing them unless and until they had been presented to the state court for review. McCurtis, however, appears to concede exhaustion; she has neither argued that this exception applies nor sought to stay her federal petition in order to pursue a state post-conviction remedy predicated on this exception. And in any event, she has not provided any basis in this petition showing the delay was not a result of her culpable negligence, for the same reasons her petition fails to demonstrate diligence. Further, she has provided no information about how her legal papers were organized, labeled, and otherwise maintained, so there is no basis even to infer that the misplacement of the papers was not due to some error on her part rather than on the part of prison staff. For all of these reasons, the court deems McCurtis's claims to be exhausted and, therefore, procedurally defaulted.

9

state court treated it as a pure issue of state evidentiary law.⁹ McCurtis cannot challenge the correctness of an evidentiary ruling based on state law in a federal habeas proceeding. *See* 28 U.S.C. § 2254 (petitions limited to grounds that petitioner "is in custody in violation of the Constitution or laws or treaties of the United States"). Thus, her claim could only be potentially cognizable on federal habeas review if it invoked the Due Process Clause or some other federal law. A constitutional claim is procedurally defaulted if the state court must "read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Although McCurtis's counsel used the term "fair trial," the issue was presented as one of prejudicial and cumulative evidence that should not have been admitted under a state statutory exception to the hearsay rule. *See* Ex. B, Def.'s Br. on App., ECF No. 14-2. McCurtis's petition for leave to appeal similarly framed this issue as one of "whether and to what extent the rules of evidence in a criminal trial limit how many prior inconsistent statements from witnesses may be admitted." Ex. E, Pet. for Leave to App. at 11, ECF No. 14-5. Thus, McCurtis has failed to present her *constitutional* claim regarding the admission of multiple inconsistent statements to the state court at any level, and it too is procedurally defaulted.

So, McCurtis's claims are procedurally defaulted, but that is not the end of the inquiry. "A prisoner can overcome procedural default by showing cause for the default and resulting prejudice, or by showing [she] is actually innocent of the offense." *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). Cause is "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding" while prejudice is "an error which so infected the entire trial that the resulting conviction violates due process." *Smith v. McKee*,

---

⁹ McCurtis's appellate briefs on this issue relied exclusively on state court precedent.

598 F.3d 374, 382 (7th Cir. 2010). Here, even if one assumes that there was cause for McCurtis's failure to raise any of her present claims on *post-conviction* review in the state court due to the temporary loss of her court papers, that would not establish cause for her failure to raise these arguments on *direct* review; McCurtis does not claim to have lost access to her papers until after the direct review period ended on February 26, 2013 (she arrived at Logan on March 14). Under Illinois law, "issues that could have been raised and considered on direct review are deemed procedurally defaulted." *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010). That goes for claims of ineffective assistance of counsel, too; "in Illinois, a defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim." *People v. Veach*, -- N.E.3d -- , 2017 IL 120649, ¶ 47; *U.S. ex rel. Pace v. Sternes*, No. 03 C 5501, 2004 WL 2496499, at *2 (N.D. Ill. Nov. 3, 2004) ("Pace's claim of ineffective assistance of trial counsel was available to him on direct appeal but was not raised at that time").

McCurtis has identified no cause for her failure to assert her federal habeas claims during the direct appellate review of her conviction. In particular, although McCurtis has alleged her trial counsel was ineffective, she has not alleged that her appellate counsel was ineffective.[10] Even if she had done so, this would not excuse her default because "a claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). Having made no claim for ineffective assistance of

---

[10] It appears McCurtis was represented by a different public defender on appeal, as she refers to her trial counsel as male but the appellate briefing is signed by a woman. The fact that McCurtis had different counsel on appeal further underscores the fact that her claims of ineffective assistance of trial counsel claim could have been brought on direct appeal; his appellate counsel was not responsible for those alleged errors.

appellate counsel, McCurtis has failed to establish cause for failing to assert her ineffective assistance of trial counsel claim on direct review.

Illinois will, however, excuse the failure to bring an ineffective assistance claim on direct review if that claim depends on facts outside the record. *Veach*, 2017 IL 120649, ¶ 47. But here, McCurtis has made no claim that her ineffective assistance claims could not have been decided on the trial record; to the contrary, she has tried to excuse all of her procedural defaults by asserting that they depend on the trial record (to which she did not have access for a some period of time *after* the direct review of her appeal had ended). Nothing in the record indicates that the petitioner has ever maintained that she needed an evidentiary hearing to pursue ineffective assistance claims against her trial counsel; there is no such claim in the record of her direct appeal or in her habeas petition, her response to this court's show cause order, or in her habeas reply brief.

Although it is not the district court's role to address arguments that a habeas petitioner has not made, the court notes as well that the particular shortcomings of trial counsel's performance to which petitioner has pointed either plainly lack merit or are not developed sufficiently to warrant an evidentiary hearing. As to the former, McCurtis claims that Jones, the victim, had a folding knife in her possession when police found her and that her possession of that knife, in her pocket, somehow shows that she intended to harm McCurtis. That strength of that premise may be debated, but in any event, as the appellate opinion reflects, the evidence that Jones had a knife in her pocket when she was discovered was, in fact, introduced at trial. *Id*. ¶ 4 ("The evidence at trial showed that Jones was found by police . . . with a folding knife in her pocket . . . ."). Moreover, her counsel argued the premise she advances in her petition, namely that her possession of a knife showed Jones to be the likely aggressor. See ECF No. 9, Ex. B at

12

DDD-69, 70 ("The fact that Latoya had that knife points to self-defense. . . . But the fact of the matter is Latoya carried a knife with her on that night.").

Similarly, McCurtis complains that "the jury instruction on second degree murder should have been address[ed]," but the transcript excerpts she supplied with her petition show that her attorney did address the instruction in his closing argument. *See* ECF No. 9, Ex. B at DDD-69, 70. Further, the appellate court's opinion confirms that the jury was instructed as to both mitigating elements that can reduce first degree murder to second degree murder, namely "sudden and intense passion based on serious provocation, and unreasonable self-defense." McCurtis doesn't claim that her attorney misconstrued or misstated these elements in any way, and her petition itself seems to acknowledge that the instruction was proper. ECF 1 at 6 ("even when a jury is properly instructed"). Based on the description of this issue in her original petition, it appears that McCurtis may actually be complaining about the trial court's handling of a jury question about the instruction, but she does not indicate what the jury's question was or how it was handled; that information, however, would be a matter of the record at trial and would not require extrinsic evidence to evaluate. *Cf. Bester v. Warden,* 836 F.3d 1331, 1339 (11th Cir. 2016) ("It is difficult, if not impossible, to imagine any facts outside the record that are relevant to the question of whether there is a reasonable probability of a different result if a particular jury instruction had been given.").

With respect to her other ineffective assistance arguments, McCurtis has failed to allege facts that, if true, would show her trial counsel's performance to have been objectively unreasonable. *See Jordan v. Hepp*, 831 F.3d 837, 849-50 (7th Cir. 2016) (hearing required where "the petitioner has alleged facts that would make [counsel's] conduct objectively unreasonable under *Strickland*"). Objectively unreasonable performance is performance that was indisputably

unjustified. *Premo v. Moore*, 562 U.S. 115, 124 (2011) ("the relevant question under *Strickland*" is whether "no competent attorney" would make the same judgment); *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("to establish ineffective representation, the defendant must prove . . . incompetence"). And because the inquiry is an objective one, this determination does not require an evidentiary hearing to assess counsel's actual intent where strategic considerations can readily be identified. In *Harrington v. Richter*, for example, the Supreme Court held that the court of appeals erred in concluding that trial counsel had been ineffective in failing to consult with forensic blood experts, positing any number of considerations that could have prompted a reasonable attorney not to have done so. 562 U.S. 86, 106-09 (2011). The Supreme Court explained that "[t]he Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking. . . . There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect. . . . *Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, ***not counsel's subjective state of mind***." *Id*. at 109-110 (emphasis added). Thus, no hearing is needed in the absence of allegations that, if true, would permit the conclusion that no competent counsel would have followed the same path.

Here, McCurtis's claims relating to the seating of a potentially biased juror and the failure to call an unidentified witness fall far short of warranting an evidentiary hearing on the reasons for trial counsel's conduct. With respect to the potential juror, McCurtis appears to claim that her attorney failed to challenge for cause a potential juror who "could have been bias[ed]" because she reported that she had a family member lost due to a violent crime. That description both mischaracterizes the juror's response—the victim of the violent crime was the son of a friend and the response did not indicate that the man had died or even been seriously injured—

and, more significantly, fails even to indicate whether the juror was selected for the jury, much less to provide a colorable basis to conduct an evidentiary hearing as to trial counsel's reason for not challenging the juror. McCurtis supplies only part of the transcript of the voir dire of this juror, for example, so her petition does not even reflect whether the juror stated that she believed she could be fair and impartial, a response that would easily justify a failure to challenge her for cause. McCurtis simply provides no basis to infer that her trial counsel's failure to challenge this juror (assuming that the juror was even seated) was constitutionally deficient and there is therefore no basis to conclude that her procedural default in failing to raise this issue on direct appeal should be excused.

So too her contention that her trial counsel was ineffective for failing to call a witness who would have testified that the victim approached McCurtis (rather than the other way around). McCurtis does not identify this witness, however, does not claim that her attorney even knew about the witness, and has provided only a bare single sentence summary of what testimony she would have provided ("Petitioner was walking to the bus stop with the witness, minding her own business when she was approach[ed] by the victim (Ms. Jones)."). Having thus failed to allege facts that would establish that her trial counsel's conduct in not calling this witness at trial was objectively unreasonable, she has failed to establish the need for any evidentiary hearing. Moreover, as the appellate court's order affirming her conviction reflects, McCurtis's attorney called three witnesses to corroborate McCurtis's account of what happened (McCurtis testified at trial) and their trial testimony opened the door to evidence of prior inconsistent statements they had made to police that undermined McCurtis's claim that she was not the aggressor in her encounter with Jones. The bar for being called as a witness for McCurtis was, as evidenced by these witnesses, very low; if her counsel declined to call still another

15

witness that McCurtis had identified, it can reasonably be inferred that he believed the witness would fare even worse. *See Richter*, 562 U.S. at 108 ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.").

McCurtis, then, has not and cannot on this record establish cause for her failure to present her federal constitutional claims on direct review of her conviction. Nor can she avoid procedural default by means of the actual innocence exception, as she has not asserted that exception to excuse her default, but the claim could not succeed in any event. The "fundamental miscarriage of justice" or "actual innocence" exception to procedural default requires that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted). McCurtis, however, has not produced any new evidence. *See Nitz v. Sigler*, No. CIV.97-384-WDS, 2008 WL 7700920, at *16 (S.D. Ill. Dec. 19, 2008), *report and recommendation adopted*, No. CIV.97-384-GPM, 2010 WL 1416002 (S.D. Ill. Mar. 31, 2010). As noted above, she asserts that an unidentified witness would have testified she was approached by the victim and that the victim had a pocket knife, but the pocket knife evidence was introduced to the jury and evidence was introduced suggesting that the victim had approached McCurtis (rather than the other way around). *People v. McCurtis*, 2012 IL App (1st) 103157-U, ¶¶ 4-8. Even assuming such testimony would qualify as "new" evidence, it falls far short of establishing "actual innocence." [cite]

\* \* \* \* \*

16

For the reasons stated above, the Court denies McCurtis's petition for a writ of habeas corpus. Further, the Court declines to issue a certificate of appealability. McCurtis has failed to make a substantial showing of a denial of a constitutional right or that reasonable jurists could debate how the petition was resolved. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Her claims are clearly time-barred under AEDPA's one year statute of limitations and are procedurally defaulted. Petitioner is advised that this is a final decision ending her case in this Court. If Petitioner wishes to appeal, she must (absent a permissible basis for extension) file a notice of appeal in this Court within thirty days of the entry of judgment and seek a certificate of appealability from the Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 4(a); 28 U.S.C. § 2253(c)(1).

Dated: October 25, 2017

_____
John J. Tharp, Jr.
United States District Judge